## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

CC Brand Holdings, LLC,

     Plaintiff,

         v.                       Case No.: 1:26-cv-49

Diamonds Painting, Inc. d/b/a Petslify, and
Niko Dulzhikov, an individual,

     Defendants.

_____

John Di Giacomo
REVISION LEGAL, PLLC
Attorneys for Plaintiff
444 Cass St., Suite D
Traverse City, MI 49684
T: (231) 714-0100
F: (231) 714-0200
john@revisionlegal.com

_____

## COMPLAINT AND DEMAND FOR A JURY TRIAL

    Plaintiff CC Brand Holdings, LLC, by and through its attorneys Revision Legal, PLLC,

states the following for its Complaint:

### PARTIES

    1.     Plaintiff CC Brand Holdings, LLC ("Cuddle Clones") is a limited liability company

organized under the laws of the State of Delaware. Cuddle Clones is a leader in the custom plush

industry and sells handmade, custom pet plush replicas and related pet-themed products throughout

the United States, including within the Eastern District of New York.

    2.     Defendant Diamonds Painting, Inc. d/b/a Petslify ("Petslify") is a corporation

organized under the laws of the State of Wyoming. Petslify conducts business from, maintains its

primary business address at, and is headquartered at 144-42 Jewel Avenue, Flushing, New York 11367, which is the address listed in connection with Petslify's federal trademark registration and the mailing address listed in its website's privacy policy. Petslify operates the commercial website <petslify.com> and markets, sells, and ships custom pet plush products to consumers throughout the United States, including residents of the Eastern District of New York.

3.      Defendant Niko Dulzhikov ("Dulzhikov") is an individual who, upon information and belief, is a founder, principal, and controlling officer of Defendant Diamonds Painting, Inc. d/b/a Petslify. Dulzhikov exercised authority over, directed, and controlled Petslify's business operations, marketing practices, advertising content, and product representations, including the conduct complained of herein. At all relevant times, Dulzhikov personally participated in, authorized, ratified, or was the moving force behind Petslify's deceptive advertising, false origin claims, misuse of Plaintiff's copyrighted images and videos, and other unlawful practices.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1125.

5.      This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over Defendant Diamonds Painting, Inc. d/b/a Petslify because Petslify is headquartered in and regularly conducts business from the State of New York. Petslify's publicly listed business address, including the address listed in connection

with its federal trademark filings and within its website privacy policy, is 144-42 Jewel Avenue, Flushing, New York 11367.

7.      Petslify also purposefully directs its business activities toward residents of New York through the operation of a fully interactive commercial website. Petslify's website allows users—including residents of New York—to upload photographs of their pets, submit customization instructions, leave product reviews and comments, interact with Petslify's content, and complete online purchases of Petslify's products for shipment into New York. Petslify accepts payment from New York residents in U.S. dollars and offers shipping of its products directly to customers located in New York.

8.      Upon information and belief, Petslify markets and advertises its products to residents of New York and has made a substantial number of sales to consumers located in this District. Petslify's deceptive and misleading advertising practices were intentionally directed toward consumers nationwide, including consumers residing in the Eastern District of New York, and Petslify's conduct has caused injury to Plaintiff within this District.

9.      The exercise of personal jurisdiction over Petslify in this District comports with due process because Petslify has purposefully availed itself of the privilege of conducting business within New York, the claims asserted here arise out of or relate to Petslify's activities directed at New York, and Petslify's conduct has caused harm within this District.

10.     This Court has personal jurisdiction over Defendant Dulzhikov because he purposefully directed, controlled, and participated in the unlawful conduct giving rise to Plaintiff's claims, including conduct expressly aimed at New York and this District.

11.     Upon information and belief, Dulzhikov exercised authority over Petslify's advertising, website content, product origin representations, customer communications, and use of

infringing imagery, including decisions to publish false U.S.-origin claims, fabricated endorsements, manipulated reviews, deceptive sales timers, and false money-back guarantees to consumers in New York.

12.     Dulzhikov knew or was recklessly indifferent to the falsity of these representations. He was aware of the manner in which Petslify's products were actually manufactured overseas, approved or permitted representations that products were "family made in Florida," and continued such representations after receiving notice from Plaintiff identifying the falsity and illegality of those claims.

13.     Dulzhikov derived financial benefit from Petslify's sales into New York, exercised control over Petslify's operations and marketing strategy, and was a primary actor in the conduct forming the basis of this action. Petslify's contacts with New York were undertaken for Dulzhikov's benefit and with his knowledge and consent.

14.     Because Dulzhikov played a direct role in the acts giving rise to Plaintiff's claims and exercised control over Petslify's purposeful activities in New York, the exercise of personal jurisdiction over Dulzhikov is proper under New York's long-arm statute and comports with due process.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Petslify is headquartered in this District, and Petslify is subject to personal jurisdiction in this District.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims. Plaintiff's federal and state-law causes of action arise from a common nucleus

of operative facts, namely, Petslify's deceptive, misleading, and unfair business practices directed at consumers and its unlawful competition with Plaintiff.

## FACTUAL BACKGROUND

### *The parties*

17.    Plaintiff CC Brand Holdings, LLC, doing business as Cuddle Clones, is a leader in the custom plush industry and has sold handmade, custom pet plush replicas and related pet-themed products since 2009.

18.    Cuddle Clones emphasizes quality, authenticity, and transparency in its marketing and operations and has invested substantial time and resources into developing its reputation for honest consumer communication and premium craftsmanship.

19.    Cuddle Clones captures the bond between pet owners and their animals by producing handcrafted plush replicas of customers' pets and has built significant goodwill and brand recognition through truthful advertising practices and consistent product quality.

20.    Defendant Diamonds Painting, Inc., doing business as Petslify, is a direct competitor of Cuddle Clones and sells custom pet plush toys through its website, petslify.com, and related marketing channels.

### *Petslify's infringement of Cuddle Clones' product photographs and videos*

21.    Petslify falsely represents itself as a family-owned United States manufacturer of custom plush toys when, in fact, Petslify's plush products are made in China.

22.    Petslify uses a third-party logistics provider in Florida but repeatedly represents in its marketing, videos, website content, and FAQs that its products are "family made in Florida," "made by a small family-owned workshop in Florida," "family owned and operated in Florida," or otherwise produced in the United States.

23.     Petslify's marketing also includes manufactured narratives about California wildfires disrupting production, despite Petslify not having any production operations in California.

24.     Petslify's false representations that its products are manufactured in the United States, including statements that they are "family made in Florida" or produced by a "family-owned workshop in Florida," constitute a misleading act under the Federal Trade Commission's country-of-origin regulations, including 16 C.F.R. Part 323, which prohibit deceptive or unsubstantiated U.S.-origin claims.

25.     In October of 2024, Cuddle Clones became aware that Petslify was using Cuddle Clones' copyrighted images and videos to promote Petslify's own competing plush products.

26.     At that time, Petslify was publicly displaying Cuddle Clones' product photos on Petslify's website and on its Amazon listings, and was using those copyrighted images as its primary sales visuals for its own plush offerings.

27.     Petslify was also publicly displaying Cuddle Clones' original video content on Petslify's YouTube channel to market Petslify's products.

28.     The infringing uses occurred prior to discovery, remained live through at least October 23, 2024, and were used by Petslify in connection with the sale of its own plush products.

29.     Petslify admitted on October 26, 2024 that it had used Cuddle Clones' copyrighted images and videos, that these images and videos were used to sell Petslify's products, and that Petslify generated revenue from sales made while those images and videos were published on its website and listings.

30.     The use of Cuddle Clones' product photographs and proprietary videos to advertise Petslify's competing plush products is likely to cause consumers to believe that Petslify's products

originate from, are sponsored by, or are otherwise affiliated with Cuddle Clones, and therefore creates confusion as to the true source and origin of Petslify's goods.

31.     Cuddle Clones' product photographs and proprietary videos serve as a key means by which consumers identify Cuddle Clones' products and the distinctive craftsmanship associated with the Cuddle Clones brand.

32.     These images and videos depict the unique look, quality, and handcrafted characteristics of Cuddle Clones' plush products, and consumers have come to associate such imagery with Cuddle Clones as the source of the goods.

33.     Petslify's use of these identical photographs and videos appropriated the goodwill and recognition embodied in those images, further contributing to consumer confusion regarding the origin and sponsorship of Petslify's competing products.

***Petslify's misleading statements and practices meant to confuse and deceive consumers***

34.     In addition to infringing Cuddle Clones' copyright works, Petslify has engaged in a host of misleading practices in order to confuse and deceive consumers. Cuddle Clones' suffers from these practices as a competitor to Petslify that does not mislead consumers.

35.     Petslify fabricates accolades and endorsements on its website, including using a "Google Top Rated Store" badge that does not exist, and displaying McAfee Secure and Norton security badges even though Petslify is not certified by either company.

36.     Petslify creates and publishes fake reviews, fake review counts, and artificial star ratings across its site. Petslify's product detail pages display thousands of purported five-star reviews inconsistent with Petslify's actual reviews on third-party platforms, including Trustpilot, where a significant portion of reviews describe fraud and dissatisfaction. Petslify's homepage

misleadingly displays a six-star rating and claims to be "trusted by 8,735+ pet parents," despite no legitimate basis for that representation.

37.    Petslify's fabricated review counts, manipulated star ratings, and inconsistent customer review representations constitute deceptive endorsement practices under the Federal Trade Commission's review and testimonial regulations, including 16 C.F.R. Part 465, which prohibit the use or presentation of fake, misleading, or unsubstantiated consumer reviews.

38.    Petslify also manipulates sales urgency by displaying fake countdown timers stating that an "offer ends tonight," when the timer resets every day on its website and across its email marketing campaigns. These timers never expire and are designed solely to pressure consumers into immediate purchases through false scarcity.

39.    Petslify's repeated use of countdown timers that reset daily, including statements that an "offer ends tonight" when no such expiration exists, constitutes a misleading practice under the Federal Trade Commission's guidance concerning unfair and deceptive "dark patterns." The FTC has made clear that the use of fictitious time-limited claims to pressure consumers into purchasing is deceptive and harms consumer trust.

40.    Petslify promotes a "100% money-back guarantee," but the guarantee is false. Petslify does not refund all monies paid by consumers, does not return shipping costs, and requires customers to pay their own return shipping. Petslify also imposes additional limitations and conditions not disclosed at the point of sale. As a result, Petslify's advertised guarantee is not a true 100% money-back offer.

41.    Petslify's representation that it offers a "100% money-back guarantee" is misleading under the Federal Trade Commission's guarantee and warranty advertising regulations, including 16 C.F.R. Part 239, which require sellers making such claims to provide a full refund of

all monies paid. Petslify does not refund shipping charges and imposes conditions inconsistent with a true 100% money-back guarantee.

42.    Consumers place significant weight on the country of origin, authenticity, and quality of custom manufactured goods, particularly those marketed as handmade or family-crafted.

43.    Consumers also rely heavily on review scores, security certifications, satisfaction guarantees, and representations about a seller's identity and production methods when evaluating competing online products.

44.    Petslify's misstatements concerning U.S. manufacturing, false review metrics, fabricated accolades, and its deceptive guarantee were material to consumer purchasing decisions and were designed to influence consumers to purchase Petslify's products over those of Cuddle Clones.

45.    Petslify repeatedly misrepresents the size and quality of its products relative to Plaintiff's products. Petslify's plushes are materially smaller than those sold by Cuddle Clones, yet Petslify markets its products as equivalent through copied imagery, inflated review scores, and misleading representations intended to create the impression of parity between the two companies' goods.

46.    Petslify also fabricates its corporate identity. Petslify publishes a false founder story centered on an individual named "Anastasia," whose image has changed multiple times over the course of Petslify's marketing, with early images traceable to stock photography and later images appearing to be AI-generated. Petslify has altered this fabricated persona multiple times in an effort to maintain the illusion of a U.S.-based, family-run company.

47.    Petslify further misleads consumers by comparing itself to unnamed "other companies" that "mass produce overseas," while representing that Petslify does things

"differently" in its Florida "workshop," even though Petslify's own product manufacturing occurs overseas.

48.    Petslify's representations are knowingly false and designed to deceive consumers into believing that Petslify's products are made in the United States and are superior to competitors' products.

49.    Petslify also engages in price competition based on deception. Petslify's products are consistently priced lower than Cuddle Clones' products, and Petslify uses its fake origin claims, fabricated reviews, manipulated sales timers, phantom accolades, and deceptive guarantee to falsely elevate the perceived value and reliability of its lower-quality goods.

50.    Petslify's corporate ownership, domain registration history, and online presence are inconsistent with its public representations of being a Florida-based, family-run manufacturer.

51.    Petslify's operations and digital footprint trace to Israel and China, and Petslify does not manufacture plush products in the United States despite repeatedly claiming U.S. production and family-based craftsmanship.

52.    As a result of Petslify's conduct, consumers are misled regarding the origin, quality, safety, and value of Petslify's products, and Cuddle Clones has been forced to compete against a marketplace participant that secures sales through fraud, deception, and unlawful misrepresentation.

***Petslify's Control and Direction by Defendant Dulzhikov***

53.    Upon information and belief, Defendant Dulzhikov exercised day-to-day control over Petslify's operations, including its marketing strategy, advertising content, website design, customer-facing representations, and use of product imagery.

54.    Dulzhikov approved, directed, or ratified Petslify's representations that its products were "family made in Florida," manufactured by a "family-owned workshop," or otherwise produced in the United States, despite knowing that Petslify's products were manufactured overseas.

55.    Dulzhikov also authorized or permitted the use of Plaintiff's copyrighted product photographs and proprietary videos to market Petslify's competing plush products, including their publication on Petslify's website, third-party marketplaces, and video platforms.

56.    Dulzhikov exercised authority to control Petslify's advertising claims regarding reviews, ratings, endorsements, security badges, sales urgency, guarantees, and corporate identity, and either knew of or was recklessly indifferent to the falsity of those claims.

57.    Upon information and belief, Dulzhikov had the authority to approve, modify, suspend, or discontinue Petslify's advertising claims and marketing practices, including its U.S.-origin representations, review and endorsement content, sales-urgency tactics, and use of product imagery, and had the ability to prevent the continuation of the deceptive practices described herein but failed to do so.

58.    Upon information and belief, Dulzhikov approved or controlled Petslify's marketing budgets, advertising expenditures, and promotional campaigns, including campaigns incorporating false U.S.-origin claims, fabricated reviews and endorsements, deceptive countdown timers, and infringing use of Plaintiff's images and videos, and authorized the continued allocation of marketing resources to those campaigns after receiving notice of their falsity and unlawfulness.

59.    Dulzhikov's personal participation, authority to control, and knowing involvement made him a moving, active, and conscious force behind Petslify's unlawful conduct.

***Correspondence between the parties***

60.     The parties engaged in extensive correspondence between October 2024 and October 2025.

61.     Cuddle Clones notified Petslify beginning in October 2024 that Petslify was using Cuddle Clones' copyrighted images and videos, and Petslify admitted to doing so.

62.     Over the following months, Cuddle Clones repeatedly notified Petslify of Petslify's false advertising, fabricated endorsements, fake reviews, misrepresentations regarding product origin, false money-back guarantee, fabricated founder story, and deceptive sales practices.

63.     Petslify repeatedly denied wrongdoing, made minimal or cosmetic changes, continued its deceptive practices, and refused to correct the majority of the violations identified by Cuddle Clones.

64.     Petslify remained on actual notice of its misconduct throughout the period leading up to this lawsuit and continued to engage in deceptive practices even after repeated written notice, evidencing a bad faith intent to deceive consumers and compete unfairly with Cuddle Clones.

65.     Dulzhikov remained on actual notice of Petslify's misconduct after receiving repeated written communications from Plaintiff identifying Petslify's infringing and deceptive practices, yet continued to permit or direct those practices in order to generate sales and revenue.

## COUNT I – FALSE ADVERTISING
### Lanham Act § 43(a)(1)(B); 15 U.S.C. § 1125(a)(1)(B)

66.     Plaintiff restates all prior paragraphs as if fully restated herein.

67.     Defendant Petslify has made false and misleading statements of fact in its commercial advertising and promotion, including but not limited to:

    a.  representing that its products are "family made in Florida," "made by a small family-owned workshop in Florida," or otherwise manufactured in the United States;

b.  representing false wildfire-related production delays;

c.  displaying fabricated or nonexistent accolades such as a "Google Top Rated Store" badge;

d.  displaying false security certifications; publishing fabricated founder profiles;

e.  manipulating and fabricating reviews, review scores, and review quantities;

f.  using false, resetting countdown timers to create fabricated sales urgency; and

g.  advertising a false "100% money-back guarantee" that does not refund all monies paid by consumers.

68.    These statements are false on their face, or, at minimum, they are likely to mislead consumers and create a false impression about the nature, characteristics, qualities, and geographic origin of Petslify's products.

69.    Petslify disseminated these false statements through its website, product pages, email campaigns, social media platforms, and other commercial advertising channels as part of an organized effort to penetrate the custom plush market and to divert consumers from purchasing from Plaintiff.

70.    These false statements are material where consumers place substantial weight on product origin, authenticity, reputation, quality, safety, truthful reviews, and the reliability of guarantees when deciding whether to purchase custom-manufactured goods online.

71.    Petslify made the above misrepresentations in interstate commerce and used them to solicit purchases from consumers nationwide, including consumers in New York and within this District.

72.     As a direct and proximate result of Petslify's false and misleading advertising, Plaintiff has suffered, and will continue to suffer, injury in the form of diverted sales, lost revenue, damage to goodwill, and harm to its business reputation.

73.     Plaintiff has no adequate remedy at law and will continue to be irreparably harmed unless Defendant's unlawful conduct is enjoined.

74.     Defendant Dulzhikov is personally liable for Petslify's violations of the Lanham Act because he directly participated in, authorized, controlled, or was the moving force behind the false and misleading advertising described herein. Dulzhikov exercised authority over Petslify's advertising content and marketing strategy, knew or was recklessly indifferent to the falsity of the challenged statements, and caused those statements to be disseminated in interstate commerce.

**COUNT II – FALSE ADVERTISING**
**New York General Business Law § 350**

75.     Plaintiff restates all prior paragraphs as if fully restated herein.

76.     Petslify has engaged in false advertising directed at consumers within the meaning of New York General Business Law § 350 by disseminating materially misleading claims through its website, product pages, email campaigns, social media, and other promotional channels.

77.     Such advertisements include, without limitation, false statements regarding U.S. manufacturing, fabricated reviews and accolades, false security endorsements, fabricated founder narratives, false production-delay explanations, false "100% money-back" guarantees, and manipulated countdown timers used to pressure consumers to purchase.

78.     These advertisements were consumer-oriented, were made to the public at large, and were likely to mislead reasonable consumers acting reasonably under the circumstances.

79.     As a direct and proximate result of Petslify's false advertising, Plaintiff has suffered injury in the form of diverted sales, damage to reputation, and loss of goodwill.

80.     Plaintiff has no adequate remedy at law and will continue to be irreparably harmed unless Defendant's conduct is enjoined.

81.     Defendant Dulzhikov is individually liable under New York General Business Law § 350 because he exercised authority to control Petslify's advertising practices, participated in the creation and dissemination of materially misleading advertisements directed at New York consumers, and knew or should have known that such advertisements were false or deceptive.

### COUNT III – DECEPTIVE ACTS AND PRACTICES
**New York General Business Law § 349**

82.     Plaintiff restates all prior paragraphs as if fully restated herein.

83.     Petslify has engaged in deceptive acts and practices in the conduct of business within the meaning of New York General Business Law § 349.

84.     Petslify's conduct—including false origin claims, fabricated endorsements, false review manipulation, fabricated founder identities, deceptive sales countdown timers, and a misleading "100% money-back guarantee"—constitutes consumer-oriented misconduct that is materially misleading to the reasonable consumer.

85.     Petslify's deceptive acts have caused injury to Plaintiff, including lost sales, loss of market share, and damage to Plaintiff's business reputation and goodwill.

86.     Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm unless Defendant's conduct is enjoined.

87.     Defendant Dulzhikov is individually liable under New York General Business Law § 349 because he participated in and controlled Petslify's consumer-oriented deceptive practices, had actual knowledge or reckless indifference to their misleading nature, and caused those practices to be directed at consumers within New York, resulting in injury to Plaintiff.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and grant the following relief:

A.     Preliminary and permanent injunctive relief enjoining and restraining Defendant, its officers, agents, servants, employees, successors, assigns, and all persons acting in concert with it from:

1.     Making, disseminating, or publishing any false or misleading statements regarding the origin, quality, characteristics, guarantees, endorsements, or reviews of Defendant's products, including but not limited to false U.S.-origin claims, fabricated accolades, fabricated founder narratives, false security certifications, and manipulated review metrics;

2.     Using Plaintiff's product photographs, proprietary videos, or any other material derived from Plaintiff's works to advertise, market, or sell Defendant's products;

3.     Representing or implying that Defendant's products originate from, are affiliated with, are sponsored by, or are approved by Plaintiff in any way;

4.     Engaging in any deceptive conduct, false advertising, or unfair competition prohibited by the Lanham Act, the New York General Business Law, or New York common law;

5.     Aiding, abetting, encouraging, or assisting any third party in engaging in the conduct described in subsections (1)–(4) above.

B.     An order requiring Defendant to remove and permanently delete all false or misleading statements, fabricated endorsements, false guarantees, false origin claims, fabricated founder materials, manipulated reviews, fabricated badges or seals, and all product listings, advertisements, or promotional content incorporating Plaintiff's imagery.

C.     An order requiring Defendant to issue corrective advertising or statements sufficient to remedy the effects of Defendant's false or misleading claims, in a manner approved by the Court.

D.     An accounting and disgorgement of all profits earned by Defendant as a result of its false advertising, false designation of origin, and unfair competition.

E.      An award of Plaintiff's actual damages, including but not limited to lost profits, damage to goodwill, reputational harm, and any other compensable injury resulting from Defendant's conduct.

F.      Treble damages or exemplary damages as permitted under the Lanham Act and New York common law due to Defendant's willful, intentional, and bad-faith misconduct.

G.      Statutory damages, where applicable, under the New York General Business Law.

H.      An award of Plaintiff's costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and applicable state law due to the exceptional and willful nature of Defendant's conduct.

I.      Pre-judgment and post-judgment interest at the maximum rate permitted by law.

J.      Such other and further relief as the Court deems just, proper, and equitable.


Respectfully submitted,

REVISION LEGAL, PLLC


Dated: January 5, 2026                     ___/JAD/_____
                                           John Di Giacomo
                                           REVISION LEGAL, PLLC
                                           Attorneys for Plaintiff
                                           444 Cass St., Suite D
                                           Traverse City, MI 49684
                                           T: (231) 714-0100
                                           F: (231) 714-0200
                                           john@revisionlegal.com

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all causes asserted in its Complaint.

Respectfully submitted,

REVISION LEGAL, PLLC

Dated: January 5, 2026
\_\_\_\_/JAD/_____
John Di Giacomo
REVISION LEGAL, PLLC
Attorneys for Plaintiff
444 Cass St., Suite D
Traverse City, MI 49684
T: (231) 714-0100
F: (231) 714-0200
john@revisionlegal.com